**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN MCCARTHY, | : | Civil No. 1:14-CV-1910 |
| | : | |
| Petitioner, | : | (Judge Caldwell) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| WARDEN, USP LEWISBURG, | : | |
| | : | |
| Respondent. | : | |

## REPORT AND RECOMMENDATION

I.     **Statement of Facts and of the Case**

A.     **Introduction**

This case comes before us on a petition for writ of habeas corpus filed by John McCarthy, an inmate housed at the United States Penitentiary, Lewisburg.  In his petition McCarthy brings various claims relating to the conduct of a series of disciplinary proceedings, claims that are both without merit and claims which have not been fully and properly exhausted.  Recognizing both the procedural flaws and substantive shortcomings in this petition, for the reasons set forth below, it is recommended that this petition be denied.

### B.   Statement of Fact and of the Case

In this case, the pertinent facts can be simply stated:

### 1.   McCarthy's latest Disciplinary Citations

The petitioner, John McCarthy is an armed career criminal who is currently serving a sentence of 235 months imprisonment for Possession of a Firearm by a Prohibited Person, in violation of 18 U.S.C. §§ 922(g) and 924(e).  In the instant petition McCarthy challenges some disciplinary hearing outcomes and seeks relief in the form of an order which would "[e]xpunge all reports.  Give good time back – preliminary injunction for appropriate process – declaratory judgment." (Doc. 1., p.8.)

Withe respect to these disciplinary matters, a review of prison records reveals that between April, 2014 and August, 2014, McCarthy had five separate disciplinary hearings.  (Doc. 17.)  Only three of the five disciplinary actions against McCarthy during that time period resulted in sanctions against him, including the loss of Good Conduct Time ("GCT") credit toward his federal sentence.

First, on June 3, 2014, the Discipline Hearing Officer ("DHO") conducted a hearing regarding Incident Report No. 2589328, which charged McCarthy with interfering with security devices, in violation of Code 208.  See Report (Id., Att. 1 to Ex. A) at 1.)  The report states that McCarthy admitted possession of contraband, a flattened AA battery terminal, and that he denied intent or design to use a handcuff

2

shim.  (Id.)  McCarthy was found to have committed the prohibited act and received sanctions which included the loss of 27 days of GCT.  (Id.)

In addition, on June 3, 2014, the DHO conducted a hearing regarding Incident Report No. 2585371, which charged McCarthy with threatening bodily harm, in violation of Code 203; and refusing to obey an order, in violation of Code 307.  See Report (Id., Att. 1 to Ex. A) at 1.)  The report stated that McCarthy admitted refusing to remove his arm from the food slot in his cell door, and but denied stating "come any closer, I'll fuck you up."  (Id.)  McCarthy was found to have committed the this prison infraction and received sanctions which included the loss of 27 days of GCT.  (Id.)

Within weeks of this episode, McCarthy was cited for a July 2014 incident in which he allegedly threatened staff and refused to comply with orders.  On this occasion McCarthy was directed to submit to hand restraints while his cell was searched.  In response McCarthy reportedly told correctional staff:  "Fuck that dude, if you try and put me in that cell I'll fuck up anyone that I have to." (Doc. 17.)  On August 8, 2014, the DHO conducted a hearing regarding this prison infraction which charged McCarthy with Threatening Another with Bodily Harm and Refusing to Obey an Order.  (Doc. 17 Att. 4 to Ex. A at 1.)  In the course of this hearing, the DHO received evidence from staff reports confirming the specific threat made by McCarthy.  For his part, McCarthy denied threatening staff while acknowledging that he refused

to submit to staff orders.  (<u>Id</u>.)  At the conclusion of this hearing , the DHO found that McCarthy had committed these prohibited acts, and sanctioned him with the loss of 27 days of good conduct time.

A review of prison records reveals that in each of these three disciplinary episodes McCarthy was afforded his administrative procedural due process rights. Thus, McCarthy received advance notice of the DHO hearings and was advised of his right to staff assistance and to present evidence on his own behalf.  In fact, throughout these proceedings McCarthy either exercised or waived his procedural due process rights.   Furthermore, the grounds for the adverse disciplinary findings against McCarthy were fully articulated by the DHO in written findings, copies of which were then timely provided to McCarthy.

## 2.      **The Bureau of Prisons Administrative Appeal Process**

At the time of these events, the Bureau of Prisons also had a three-level administrative remedy process in place that must be fully exhausted before an inmate can bring an action in federal court.  <u>See</u> 28 C.F.R. § 542.10, *et seq.*  "The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement."  <u>Id</u>. at § 542.10(a).  "If an inmate raises an issue in a request or appeal that cannot be resolved through the Administrative Remedy Program, the Bureau will refer the inmate to the appropriate

statutorily-mandated procedures." Id. at § 542.10©.  In order to exhaust appeals under

the BOP's administrative remedy procedure, an inmate must first informally present

his complaint to staff, and staff is to attempt to resolve the matter.  Id. at § 542.13(a).

If the informal resolution is unsuccessful, then the inmate must execute the appropriate

form and bring the matter to the attention of the warden.  Id. at §542.14. The warden

is then to respond to the inmate's complaint within 20 calendar days.  If the inmate is

dissatisfied with the warden's response, he may then appeal to the BOP Regional

Director within 20 calendar days.  Id. at § 542.15(a).  If the response of the BOP

Regional Director is not satisfactory, the inmate may then appeal to the BOP Central

Office within 30 calendar days, which office is the final administrative appeal in the

BOP.  Id.  An exception is made for appeals of decisions of a discipline hearing officer

("DHO"), such as in the instant case, which are first raised directly to the BOP

Regional Office and then to the BOP Central Office.  28 C.F.R. §542.14(d)(2).  No

administrative remedy appeal is considered to have been fully exhausted until rejected

by the BOP Central Office.  Id. at § 542.15(a).

### 3.    McCarthy Has Failed to Properly Exhaust His Administrative Remedies

The Bureau of Prisons maintains a record of inmate grievances.  A review of

McCarthy's administrative remedy records revealed that McCarthy failed to exhaust

any of the issues raised in this petition.  (Doc. 8.)  Specifically, McCarthy filed a total

of ten Requests for Administrative Remedy since April 1, 2014 (the beginning of the period of time during which he claims he was denied due process with regard to a disciplinary action.)   See Cunningham Decl. (<u>Id</u>., Ex. A) ¶ 3; Report (Att. 2 to Cunningham Decl (Ex. A).)   One of those requests, Administrative Remedy No. 794688-R1, received on September 8, 2014, was an appeal of a DHO hearing. (<u>Id</u>., Cunningham Decl. (Ex. A) ¶ 3; Report (Att. 2 to Cunningham Decl (Ex. A)) at 4.) This request was rejected on September 18, 2014, because McCarthy did not provide the required copy of the DHO report he was appealing. (<u>Id</u>.)   To date, he has not re-submitted this appeal. (<u>Id</u>.)   Thus, McCarthy has never fully grieved these prison disciplinary decisions.   Instead, McCarthy elected to file the instant federal habeas corpus petition. (Doc. 1.)

## II. <u>Discussion</u>

### A. <u>The Exhaustion Doctrine Bars Consideration of This Habeas Petition</u>

At the outset, this petition suffers from a fundamental procedural flaw, since the petitioner has failed to properly exhaust his administrative remedies within the federal prison system.   Although 28 U.S.C. § 2241 contains no express exhaustion requirement, "[o]rdinarily, federal prisoners are required to exhaust their administrative remedies prior to seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2241." <u>Gambino v. Morris</u>, 134 F.3d 156, 171 (3d Cir.1998); <u>see</u> <u>also</u>, <u>e.g.</u>,

Callwood v. Enos, 230 F.3d 627, 634 (3d Cir.2000); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir.1981). These exhaustion rules serve an important and salutary purpose. The United States Court of Appeals for the Third Circuit requires administrative exhaustion of a claim raised under § 2241 for three reasons: "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir.1996); see also Gambino, 134 F.3d at 171; Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988).

In this case, it is undisputed that McCarthy has not fully exhausted his administrative remedies, since McCarthy neglected to fully prosecute this grievance through the three-tier grievance process prescribed by prison regulations. Thus, this case presents the very paradigm of an unexhausted petition. With respect to unexhausted habeas claims like those presented by here, it is well settled that: "Courts in the Middle District of Pennsylvania have consistently held that 'exhaustion of administrative remedies is not rendered futile simply because a prisoner anticipates he will be unsuccessful in his administrative appeals . . . ..' " Ross v. Martinez, No. 09-1770, 2009 WL 4573686, 3 (M.D.Pa. Dec. 1, 2009). Quite the contrary, rigorously

applying these exhaustion requirements, court have consistently rejected habeas

petitions challenging prison disciplinary decisions where the inmate-petitioners have

failed to fully exhaust their administrative remedies. See, e.g., Johnson v. Williamson,

350 F. App'x 786 (3d Cir. 2009); Pinet v. Holt, 316 F. App'x 169 (3d Cir. 2009);

Moscato v. Federal Bureau of Prisons, 98 F.3d. 757 (3d Cir. 1996).

As this Court has previously explained when dismissing a federal prisoner's

habeas petition for failure to exhaust administrative remedies:

> In order for a federal prisoner to exhaust his administrative remedies, he
> must comply with 28 C.F.R. § 542. See 28 C.F.R. § 542.10, et seq.;
> Lindsay v. Williamson, No. 1:CV-07-0808, 2007 WL 2155544, at *2
> (M.D.Pa. July 26, 2007). An inmate first must informally present his
> complaint to staff, and staff shall attempt to informally resolve any issue
> before an inmate files a request for administrative relief. 28 C.F.R. §
> 542.13(a). If unsuccessful at informal resolution, the inmate may raise
> his complaint with the warden of the institution where he is confined. 28
> C.F.R. § 542.14(a). If dissatisfied with the response, he may then appeal
> an adverse decision to the Regional Office and the Central Office of the
> BOP. 28 C.F.R. §§ 542.15(a), 542.18. No administrative appeal is
> considered finally exhausted until a decision is reached on the merits by
> the BOP's Central Office. See Sharpe v. Costello, No. 08-1811, 2008
> WL 2736782, at *3 (3d Cir. July 15, 2008).

Miceli v. Martinez, No. 08-1380, 2008 WL 4279887, 2 (M.D.Pa. Sept. 15, 2008)

This exhaustion rule in federal habeas corpus proceedings is also subject to a

procedural default requirement. "[A] procedural default in the administrative process

bars judicial review because 'the reasons for requiring that prisoners challenging

disciplinary actions exhaust their administrative remedies are analogous to the reasons

for requiring that they exhaust their judicial remedies before challenging their convictions; thus, the effect of a failure to exhaust in either context should be similar.' Sanchez, 792 F.2d at 698.  We require exhaustion for three reasons:  (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.  Bradshaw, 682 F.2d at 1052; see also Schlesinger v. Councilman, 420 U.S. 738, 756-57, 95 S.Ct. 1300, 1312, 43 L.Ed.2d 591 (1975) (exhaustion avoids duplicative proceedings and insures that judicial review will be informed and narrowed); McKart v. United States, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194 (1969) (circumvention of administrative process diminishes effectiveness of an agency by encouraging prisoners to ignore its procedures). Requiring petitioners to satisfy the procedural requirements of the administrative remedy process promotes each of these goals."  Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 761-62 (3d Cir. 1996)  For these reasons, "a federal prisoner who. . . , fails to exhaust his administrative remedies because of a procedural default, and subsequently finds closed all additional avenues of administrative remedy, cannot secure judicial review of his habeas claim absent a showing of cause and prejudice." Id.

This basic legal tenet applies here and is fatal to McCarthy's habeas corpus petition. With respect to his complaints in this petition McCarthy is an inmate who has failed to exhaust his remedies, and now fails to provide cause and prejudice which excuses this earlier procedural default. Therefore, McCarthy's unexhausted claims should be dismissed.

### B.    This Petition Fails on Its Merits

Furthermore, considered on its merits, this petition fails on substantive grounds given the deferential standard of judicial review that applies to prison disciplinary actions. Liberally construed, in this habeas petition McCarthy launches a two-fold constitutional assault upon these prison disciplinary decisions, challenging the disciplinary process generally on procedural due process grounds, and asserting that the decisions were substantively flawed since there was insufficient evidence to support a finding of misconduct on his part. Yet, McCarthy faces an exacting burden of proof in advancing these two constitutional claims.

### 1.    Procedural Standards for DHO Hearings

First, with respect to his procedural due process concerns, it is well established that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). The Supreme Court has, however, recognized

a set of minimum procedural protections that must apply to prison disciplinary proceedings, including the right to: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety or correctional goals, to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Id. at 563-67.

Due process also requires that a prison disciplinary tribunal be sufficiently impartial. Meyers v Alldredge, 492 F.2d 296, 305-07 (3d Cir. 1974). The requirement of an impartial tribunal "prohibits only those officials who have a direct personal or otherwise substantial involvement, such as major participation in a judgmental or decision-making role, in the circumstances underlying the charge from sitting on the disciplinary committee." Meyers, 492 F.2d at 306. In the past, inmates have often invited courts to set aside disciplinary hearing results based upon general assertions of staff bias. Yet, such requests, while frequently made, have rarely been embraced by the courts. Instead, the courts have held that a "generalized critique" of staff impartiality is insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Furthermore, in the absence of a showing that the hearing officer was "personally or substantially involved in the circumstances underlying [the investigation of the] charge," Greer v.

Hogston, 288 F.App'x. 797, 799 (3d Cir. 2008), courts generally decline to strike down disciplinary decisions on claims of staff bias. See Redding v. Holt, 252 F.App'x 488 (3d Cir. 2007).

In the federal prison system, the Bureau of Prisons has, by regulation, adopted specific guidelines for inmate discipline procedures which are set forth at 28 C.F.R. §541.10 et seq. These guidelines are specifically tailored and designed to meet the due process requirements outlined by the Supreme Court in Wolff. See Von Kahl v. Brennan, 855 F. Supp. 1413 (M.D. Pa. 1994). Under these regulations, when prison staff have reason to believe that a prohibited act has been committed by an inmate, an incident report must be prepared and referred for investigation. 28 C.F.R. §541.5 After investigation, the incident report is referred to a Unit Discipline Committee (UDC) for an initial hearing. 28 C.F.R. §541.7. The inmate, in turn, is entitled to notice of any proposed violation. The UDC may either reach a finding regarding whether a prohibited act was committed, or refer the case to the Discipline Hearing Officer (DHO) for further hearing. 28 C.F.R. §541.7. The DHO then has the authority to dismiss any charge, to find a prohibited act was committed, and to impose any available sanction for the act. 28 C.F.R. §541.8. The hearing is conducted pursuant to the procedures set forth at 28 C.F.R. §541.8.

Throughout this hearing process the inmate is provided with a series of procedural rights.  For example, the inmate is entitled to notice of the alleged infraction.  Specifically, the Warden must give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing.  28 C.F.R. §541.8.  The inmate is also entitled to assistance at DHO hearings.  In particular, the Warden must provide the inmate with a full time staff member to represent him at the DHO hearing. 28 C.F.R. §541.8.

The inmate also has a series of procedural rights at the hearing itself.  Thus, at the DHO hearing, the inmate is entitled to make a statement and present documentary evidence.  The inmate also has the right to submit names of requested witnesses and have them called to testify and to present documents.  While the DHO need not call repetitive witnesses or adverse witnesses, 28 C.F.R. §541.8, the DHO shall call those witnesses who have information directly relevant to the charges and who are reasonably available.  The inmate has the right to be present throughout the DHO hearing except during deliberation or when institutional security would be jeopardized. 28 C.F.R. §541.8.

In addition, the regulations prescribe procedural standards for DHO decision-making.  Thus, the regulations require that the DHO must consider all evidence presented at the hearing.  The decision of the DHO must be based on the facts

13

presented, and if there is conflicting evidence, it must be based on the greater weight of the evidence. 28 C.F.R. §541.8. Finally, the DHO must prepare a record of the proceedings. This record must be sufficient to document the advisement of inmate rights, the DHO's findings, the DHO's decision and the specific evidence relied upon by the DHO. The record must include a brief statement of the reasons for the sanction imposed. A copy of this record must be delivered to the inmate. 28 C.F.R. §541.8.

Given the panoply of procedural protections afforded to inmates by these regulations, courts have consistently held that when prison officials comply with these regulations they fully satisfy the requirements of procedural due process in this prison disciplinary setting. See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009) (upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

## 2.    Substantive Standards Governing DHO Decisions

In his habeas petition, McCarthy also attacks the substance of the various DHO decisions, arguing that there was insufficient evidence to support any findings of misconduct on his part. Like his procedural due process challenge, this substantive attack on the sufficiency of the evidence in these disciplinary hearings must meet a

demanding legal standard to succeed.  A prison disciplinary determination comports with due process if it is based on "some evidence."  See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 454-56 (1985) ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board").  This standard is minimal and does not require examination of the entire record, an independent assessment of the credibility of witnesses, or even a weighing of the evidence.  See id. at 455; Thompson v. Owens, 889 F.2d 500, 501-02 (3d Cir. 1989).  Accordingly, in order to pass constitutional muster a "disciplinary decision must [simply] be supported by 'some evidence,' that is, 'any evidence in the record that could support the conclusion reached by the disciplinary board.' " Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011).  Therefore, it is well settled that the decision of the DHO is entitled to considerable deference by a reviewing court and must be upheld whenever there is "some evidence" to support the decision.  Hill, 472 U.S. at 457; Elkin v. Fauver, 969 F.2d 48 (3d Cir.1992); Thompson v. Owens, 889 F.2d 500 (3d Cir. 1989); Franco v. Kelly, 854 F.2d 584, 588 (2d Cir. 1988); Freeman v. Rideout, 808 F.2d 949, 955 (2d Cir. 1986).

Thus, in this setting the "function [of the court] is to determine whether there is some evidence which supports the decision of the [DHO]." Freeman, 808 F.2d at

954. As the Supreme Court has observed, the "some evidence" standard is a highly

deferential standard of review and:

> Ascertaining whether this standard is satisfied does not require
> examination of the entire record, independent assessment of the
> credibility of witnesses, or weighing of the evidence.  Instead, the
> relevant question is whether there is any evidence in the record that could
> support the conclusion reached by the disciplinary board.

Hill, 472 U.S. at 455-456. McGee v. Scism, 463 F. App'x 61, 63 (3d Cir. 2012);

Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011) (The "some evidence" standard

"does not require examination of the entire record, independent assessment of the

credibility of witnesses, or weighing of the evidence."  "[T]he relevant question is

whether there is any evidence in the record that could support the conclusion reached

by the disciplinary board"); Campbell v. Holt, 432 F. App'x 49, 51 (3d Cir. 2011)("we

need not examine the entire record, re-weigh the evidence, or independently assess

witness credibility in assessing whether the 'some evidence' standard is met.")

Applying this deferential standard, once the reviewing court determines there is "some

evidence" to support the finding of the DHO, the court must reject the evidentiary

challenge by the petitioner and uphold the finding of the DHO.  Griffin v. Spratt, 969

F.2d 16, 22 (3d Cir. 1992); Thompson, 889 F.2d 501;  Freeman, 826 F.2d at 954.  In

practice, courts have rarely condemned correctional disciplinary decisions as being

wholly lacking in evidentiary support, and have frequently concluded that disciplinary

findings are supported by the requisite degree of proof .  <u>See e.g.</u>, <u>McGee v. Scism</u>, 463 F. App'x 61, 63 (3d Cir. 2012); <u>Stanko v. Obama</u>, 434 F. App'x 63, 66 (3d Cir. 2011); <u>Campbell v. Holt</u>, 432 F. App'x 49, 51 (3d Cir. 2011); <u>Fiore v. Lindsay</u>, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); <u>Macia v. Williamson</u>, 219 F. App'x 229 (3d Cir. 2007)(same); <u>Reynolds v. Williamson</u>, 197 F. App'x 196 (3d Cir. 2006)(same); <u>Levi v. Holt</u>, 193 F. App'x 172 (3d Cir. 2006)(same); <u>Sinde v. Gerlinski</u>, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

> ### C. <u>McCarthy Was Afforded His Procedural Due Process Rights at the DHO Hearings, and the DHO Findings of Misconduct Are Supported By Adequate Evidence</u>

Judged against these standards, McCarthy's procedural and substantive challenges to these three prison disciplinary proceedings which resulted in the loss of good time for this inmate simply fail.

First, with respect to any procedural due process claims, in this case it is evident that this prisoner's due process rights were fully vindicated.  McCarthy received advance, written notice of the proposed disciplinary charges against him.  Moreover, he was notified on multiple occasions of his procedural due process rights, including his right to have staff assistance and to request witnesses.  In this case, McCarthy either exercised those rights, or expressly waived the rights he had in connection with these disciplinary hearings.  Furthermore, once the hearings were concluded prison

officials scrupulously complied with prison regulations, and afforded McCarthy his due process rights, by providing him with written decisions outlining the basis of their actions, and describing his appellate rights.

As for any complaints regarding the procedural fairness of the DHO proceedings, the petitioner offers little to support this claim beyond a "generalized critique" of staff impartiality, which is as a legal matter insufficient to demonstrate the degree of bias necessary to prove a due process violation. Lasko v. Holt, 334 F. App'x 474 (3d Cir. 2009). Thus, the record of these disciplinary proceedings affirmatively reveals that McCarthy was given all of the procedural protections that due process requires in this setting since he was afforded: (1) advance written notice of the disciplinary charges; (2) an opportunity to call witnesses and present documentary evidence as part of a defense; and (3) a written statement by the fact finder of the evidence relied on and the reasons for the disciplinary action. Wolff v. McDonnell, 418 U.S. at 563-67. Given the full array of procedural rights provided to McCarthy during these proceedings, any procedural due process claims simply fail. See e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).

Nor can McCarthy successfully challenge the substantive outcome of the DHO hearing, since it is apparent that these decisions were adequately supported by "some evidence" in the record.  Indeed, with respect to this issue, the DHO decisions entailed the most basic of fact-finding determinations:  weighing inculpatory evidence and considering whether, with respect to some of the citations, that evidence supported the inmate's admission of guilt.  Given McCarthy's acknowledgment of his guilt on a number of these infractions, the DHO need only have believed McCarthy to find him guilty of these infractions.  Furthermore, the evidence linking McCarthy to other rules violations was clear and convincing.  Indeed, it is difficult to construe McCarthy's reported statements– "come any closer, I'll fuck you up" and  "Fuck that dude, if you try and put me in that cell I'll fuck up anyone that I have to"–as anything other than threats.  In light of McCarthy's confession to some of these infractions, and the great weight of the evidence implicating him on other prison rules violations, the DHO findings of guilt were entirely reasonable.

Since the "some evidence" standard of "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence," but only entails a determination "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board," Stanko v. Obama, 434 F. App'x 63, 66 (3d Cir. 2011), this reasonable, rational finding by the

DHO is fatal to McCarthy's claims in this petition.  Accordingly, on these facts, we conclude that there was also some evidence to support this disciplinary finding.  Since there is an adequate factual basis for that disciplinary finding, McCarthy's substantive challenge to these disciplinary actions should also be rejected.  See, e.g., Fiore v. Lindsay, 336 F. App'x 168 (3d Cir. 2009)(upholding disciplinary decision); Macia v. Williamson, 219 F. App'x 229 (3d Cir. 2007)(same); Reynolds v. Williamson, 197 F. App'x 196 (3d Cir. 2006)(same); Levi v. Holt, 193 F. App'x 172 (3d Cir. 2006)(same); Sinde v. Gerlinski, 252 F. Supp. 2d 144 (M.D.Pa. 2003)(same).[1]

### III.   **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Petition be DENIED and that a certificate of appealability should not issue.  The Petitioner is further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within ten (10) days after

---

[1]As for McCarthy's UDC disciplinary citations which did not result in any loss of good time for this prisoner, those sanctions, which related merely to the conditions of his confinement,  do not sound in habeas since "a challenge to a disciplinary hearing that resulted in the imposition of discipline other than the loss of good-time credit does not allege a proper ground for habeas relief." Nicholson v. Carroll, 458 F. Supp. 2d 249, 251 (D. Del. 2006)

being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 23d day of February, 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge